IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-00778-MSK-MEH

THE ESTATE OF JESUS OCTOVIO AGUILAR, Personal Representatives Tiffany Victoria Aguilar, Daniel Luciano Aguilar, and Juanita Vargas,

    Plaintiff,

v.

TED MINK, Jefferson County Sheriff,
RAY FLEER, Undersheriff,
JOHN BURKARD, Deputy,
PATSY MUNDELL, Division Chief,
JEFF SCHRADER, Division Chief,
DAN GARD, Division Chief,
SCOTT POCSIK, Division Chief, and
THE BOARD OF COUNTY COMMISSIONERS FOR THE COUNTY OF JEFFERSON,

    Defendants.

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Michael E. Hegarty, United States Magistrate Judge.**

    Before the Court is the Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) [filed June 6, 2013; docket #24]. Pursuant to 28 U.S.C. § 636(b)(1)(B) and D.C. Colo. LCivR 72.1C, the motion was referred to this Court for recommendation on July 8, 2013. (Docket #31.) The matter is fully briefed, and the Court finds that oral argument would not materially assist in the adjudication of the motion. For the reasons that follow, this Court respectfully recommends that Defendants' motion be **granted**.[1]

---

[1] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations.

**BACKGROUND**

I. **Statement of Facts**

The following are factual allegations (as opposed to legal conclusions, bare assertions or merely conclusory allegations) made by the Plaintiff (or construed liberally) in the Amended Complaint, which are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must limit its review to the four corners of the complaint, but may also consider documents attached to the complaint as exhibits, *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001), as well as unattached documents which are referred to in the complaint and central to the plaintiff's claim, so long as the authenticity of such documents is undisputed. *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir. 2001).

On or about October 11, 2011, Jesus Aguilar was transported by members of the Jefferson County Sheriff's Office to Advanced Medical Imagery to receive medical treatment. While at the Advanced Medical Imagery facility, Mr. Aguilar tried to flee. Mr. Aguilar was subsequently shot in the back by Deputy John Burkard of the Jefferson County Sheriff's Office. Mr. Aguilar was then transported to St. Anthony's Medical Center, but died as a result of injuries suffered from the shooting.

II. **Procedural History**

Personal Representatives of the Estate of Jesus Aguilar initiated this civil rights action on March 26, 2013 by filing a Complaint alleging generally that Defendants violated Mr. Aguilar's

---

*United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

constitutional rights by (1) using excessive force to shoot and kill him when he was allegedly attempting to flee while in the custody of Jefferson County sheriff's officials, (2) failing to train and/or supervise officers regarding the use of force, and (3) conspiring to violate Plaintiff's due process and equal protection rights, and (4) by refusing or neglecting to prevent the violation of Plaintiff's constitutional rights. Complaint, docket #1 at 4-12. Specifically, Plaintiff describes his claims as follows:

> Plaintiff filed a *Monell* claim against Defendant County of Jefferson and the Board of County Commissioners for the County of Jefferson, pursuant to 42 U.S.C. § 1983; a violation of 42 U.S.C. § 1983 against Defendant Burkard; failure to train and supervise against Defendant County of [Jefferson]; a conspiracy violation in violation of a violation of 42 U.S.C. § 1983 against all defendants; and refusing or neglecting to prevent against the County of Jefferson and the Board of County Commissioners for the County of Jefferson.

Scheduling Order, ¶ 3a, docket #27 at 2; *see also* Response, docket #30 at 1-2. On May 20, 2013, Chief Judge Krieger granted Plaintiff's motion to dismiss the City of Golden as a Defendant in this matter. Docket #22.

In response to the Complaint, Defendants filed the present motion to dismiss on June 6, 2013 arguing that Plaintiff fails to allege sufficient facts identifying a specific county policy or custom and how that policy or custom caused Mr. Aguilar's alleged injury; that Plaintiff fails to allege facts establishing that Defendant Burkard's use of force was unnecessary, that Burkard's actions were wanton, or that Mr. Aguilar had a clearly established right that prohibited Burkard from using such force under the circumstances; that a single incident is insufficient to support an inadequate training or supervision claim; that Plaintiff fails to allege facts showing the County's deliberate indifference; that Plaintiff alleges no facts in support of his conspiracy claim; and that Plaintiff fails to identify any specific failure to prevent or any facts to establish that such failure to prevent was deliberately indifferent or caused a constitutional violation.

Plaintiff counters that Defendant Burkard is not entitled to qualified immunity, because a

reasonable person in his place would have known that a constitutional violation was occurring where Mr. Aguilar was shot and killed without posing a risk to any person. Response, ¶ 7, docket #30 at 4. Further, Plaintiff argues that Deputy Burkard's use of excessive force against Mr. Aguilar would demonstrate the inability of Jefferson County to properly investigate claims of excessive force, which reflects "custom or usage" with the force of law. *Id.*, ¶ 9. Plaintiff also states that its claim of failure to train and/or supervise amounts to deliberate indifference reflecting behavior "that can provide the basis for believing there is a pattern of unconstitutional conduct so pervasive as to imply Defendants' constructive knowledge." *Id.*, ¶ 10. Finally, Plaintiff asserts that the allegations supporting its conspiracy claim are sufficiently detailed in accordance with Fed. R. Civ. P. 8(a) to show "enough facts to raise a reasonable expectation that discovery will reveal evidence of an illegal agreement." *Id.*, ¶ 11.

Defendants reply that Plaintiff still fails to identify a custom or policy that would satisfy the requirements for municipal liability, and does not state facts linking any lack of training or supervision to a constitutional violation. Further, Defendants contend that the Complaint contains no factual allegations that Mr. Aguilar was not a risk to others at the time he was fleeing. Finally, Defendants assert that there are no facts identifying how the other individual Defendants participated in any conspiracy or "failure to prevent."

## **LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two prong analysis. First, a court must identify "the allegations in the complaint that are not

4

entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679-80. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kansas Penn Gaming, LLC v. Collins,* 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

## ANALYSIS

Plaintiff brings claims pursuant to 42 U.S.C. § 1983 for violations of the Fourth, Eighth and Fourteenth Amendments against Jefferson County and a violation of the Eighth Amendment against Defendant Burkard. Further, Plaintiff alleges a violation of 42 U.S.C. § 1985 against all Defendants. Defendants move for dismissal of all claims asserting essentially that Plaintiff has failed to state sufficient facts to support its claims. The Court will analyze each claim in turn.

**I.    Claims One and Three**

Plaintiff brings Claims One and Three against Defendant Jefferson County. Complaint, docket #1 at 4, 7. Defendants contend that Plaintiff fails to properly allege municipal liability by failing to identify a custom, policy or practice of Jefferson County that caused Mr. Aguilar's injury.

The Supreme Court recognizes that municipalities and other local government units are

"persons" to whom Section 1983 applies. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 n. 55 (1978). Jefferson County[2] does not dispute that it is an entity subject to suit for Plaintiff's Section 1983 claims. Plaintiff alleges a violation of the Fourth Amendment claiming that Jefferson County violated Mr. Aguilar's right to be secure in his person against unreasonable search and seizure; a violation of the Eighth Amendment claiming Jefferson County violated Mr. Aguilar's right not to be inflicted with cruel and unusual punishment; and a violation of the Fourteenth Amendment claiming Jefferson County violated Mr. Aguilar's right to procedural and substantive due process of law. Complaint, ¶ 17, docket #1. Defendants argue these claims should be dismissed because the Plaintiff fails to allege sufficient facts identifying a specific county policy or custom and how that policy or custom caused Mr. Aguilar's alleged injury.

Local governments can be liable under § 1983 "only for their *own* illegal acts." *Connick v. Thompson*, -- U.S. --, 131 S. Ct. 1350, 1359, 179 L. Ed. 2d 417 (2011) (internal quotation and citations omitted) (emphasis in original). Hence, "[a] municipality may not be held liable under § 1983 solely because its employees inflicted injury on the plaintiff." *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993) (citing *Monell*, 436 U.S. at 692). Rather, to prove a § 1983 claim against a municipality, a plaintiff must demonstrate (1) the existence of a municipal policy or custom, which (2) directly caused the injury alleged. *Id.* (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989)). In establishing the first requirement, a plaintiff may show a municipal policy

---

[2] Although the claim is alleged specifically against Jefferson County, the Court notes that Plaintiff also names the non-entity Defendants in their official capacities. Claims against municipal officials acting in their "official" capacities are the same as an action against the municipality itself. *See Watson v. City of Kansas City,* 857 F.2d 690, 695 (10th Cir. 1988) (suits against a municipality and suits against municipal officials acting in their "official" capacities are the same).

or custom in the form of any of the following:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions - and the basis for them - of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (quoting *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189-90 (10th Cir. 2010)) (internal quotations omitted).

Here, although not clear, it appears that Plaintiff alleges in Claim One a formal regulation or policy statement (option 1) or an informal custom (option 2) of Jefferson County caused Plaintiff's injury, and Plaintiff alleges in Claim Three that Jefferson County's failure to properly train and supervise its employees (option 5) caused Plaintiff's injury.

First, the Court agrees with Defendants that Plaintiff fails to allege any facts identifying a formal regulation or policy statement, or an informal custom amounting to a widespread practice. Rather, the facts reflect only a single incident of a Jefferson County deputy shooting an inmate while he attempted to flee custody, and the inmate's injuries from the shooting resulted in his death. Furthermore, Plaintiff fails to assert facts that plausibly suggest an entitlement to relief for Jefferson County's alleged failure to train and/or supervise. In his third claim for relief, Plaintiff's allegations are, essentially, a recital of conclusory statements asserted to support a claim for failure to train and/or supervise. For example, Plaintiff alleges:

> The infliction of injuries and deprivation of constitutional rights to the [sic] Mr. Aguilar occurred as a result of or as a consequence of the execution of the policies, procedures, customs, or usages of Defendant, policies representing a deliberate or

conscious choice by Defendant, adopted or maintained in deliberate indifference to the rights and interests of its citizens, and which ratify unlawful acts by its officers, including but not limited to the following policies, customs or usages concerning the use of excessive force:

a. A policy of providing inadequate training in the use of excessive force through the failure to require constitutionally adequate training;

b. A policy of non-prosecution and a tacit authorization of the use of excessive force by its officers involved in incidents of excessive force leading to great bodily injury or death;

c. A policy, custom or usage of failure to discipline, sanction or discharge officers involved in unjustified policy brutality, including the failure to terminate or even sanction or reprimand police officers resulting in the practical and legal effect of ratification by Defendant, endorsing the irresponsible use of force as part of a tacit City policy of condoning such irresponsibility;

d. A policy of condoning and permitting the exercise of excessive force by police officers, regardless of the circumstances;

e. A "cover-up" policy following police beatings and killings; and

f. A failure to follow up and discipline officers who have been found responsible in excessive force situations.

Complaint, ¶ 32, docket #1. As with most other allegations in the third claim for relief, the Complaint contains no facts supporting these conclusory allegations. In addition to that already mentioned, there is nothing about whether Deputy Burkard was sanctioned or disciplined or, even, prosecuted. Moreover, there are no facts indicating that anyone higher than Deputy Burkard condoned or permitted the shooting, nothing about the "circumstances" surrounding the shooting, and nothing about a "cover up."

Accordingly, this Court recommends that the District Court conclude Plaintiff has failed to allege facts supporting any plausible claims for municipal liability, including Claims One and Three, and grant Defendants' motion to dismiss such claims.

**II.     Claim Two**

Plaintiff alleges in Claim Two that Defendant Deputy Burkard violated Mr. Aguilar's Eighth Amendment rights against cruel and unusual punishment by using excessive force to shoot and kill Mr. Aguilar. *See* Complaint, ¶ 21, docket #1.  Defendants argue that Deputy Burkard is entitled to qualified immunity for claims against him in his individual capacity because Plaintiff has failed to allege facts establishing that Burkard's use of force was unnecessary or that his actions were wanton. Defendants further claim that Plaintiff fails to allege facts demonstrating Mr. Aguilar had a clearly established right that prohibited Burkard from using such force under the circumstances.

A.     <u>Qualified Immunity</u>

Qualified immunity protects from litigation a public official whose possible violation of a plaintiff's civil rights was not clearly a violation at the time of the official's actions. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "It is an entitlement not to stand trial or face the other burdens of litigation." *Ahmad v. Furlong*, 435 F.3d 1196, 1198 (10th Cir. 2006) (internal quotations and citations omitted). "The privilege is an immunity from suit rather than a mere defense to liability." *Id.*

Qualified immunity is designed to shield public officials and ensure "that erroneous suits do not even go to trial." *Hinton*, 997 F.2d at 779 (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Harlow*, 457 U.S. at 806-08 (1982); *Pueblo Neighborhood Health Ctrs. v. Losavio*, 847 F.2d 642, 645 (10th Cir. 1988)). Consequently, courts should address the qualified immunity defense at the earliest possible stage in litigation. *Medina v. Cram*, 252 F.3d 1124, 1127-28 (10th Cir. 2001); *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995).

When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to overcome the asserted immunity. *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009).

"The plaintiff must demonstrate on the facts alleged both that the defendant violated his constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

The Supreme Court has discarded a review process that required courts to examine these questions sequentially, first considering whether a right had been violated, and then second – if the court concluded a right had been violated – whether that right was clearly established at the time of the alleged violation. *Pearson*, 555 U.S. at 232-35. *Pearson* instead affords courts the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236; *see also Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1277 (10th Cir. 2009).

Here, for Plaintiff's Eighth Amendment claim against Burkard, the Court examines first whether Plaintiff has alleged sufficient facts supporting a plausible claim that Burkard violated Mr. Aguilar's constitutional right against cruel and unusual punishment. If the Court finds that Plaintiff has alleged sufficient facts showing the violation of a right, the Court will then proceed to analyze whether Mr. Aguilar's constitutional right was clearly established at the time of the alleged conduct.

B.   Violation of Eighth Amendment

The Court agrees with Defendants that it can be inferred from the Complaint that Mr. Aguilar was in the custody of the Jefferson County Sheriff's Department at the time of the events described in the Complaint. In fact, the Plaintiff's characterization of the excessive force claim as a violation of the Eighth Amendment persuades the Court that Mr. Aguilar was a convicted person in custody of prison/jail officials. *See Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989) (whereas the Fourth Amendment applies to excessive force claims in the context of an arrest, the Eighth Amendment applies to excessive force claims arising after conviction). "[T]he Eighth Amendment governs a

prisoner's claim that prison officials used excessive force in the course of preventing his escape." *Kinney v. Indiana Youth Ctr.*, 950 F.2d 462, 465 (7th Cir. 1991), *cert. denied*, 504 U.S. 959 (1992).

In determining whether prison officials used excessive force in violation of the Eighth Amendment, the core inquiry is "not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010); *see also Hudson v. McMillan*, 503 U.S. 1, 7 (1992) (citing *Whitley v. Albers,* 475 U.S. 312, 320-21 (1986)). In making this determination, the Court may consider the need for the application of force, the extent of the injury inflicted, the extent of the threat to the safety of others, and any efforts made to temper the severity of a forceful response." *Id*; *see also Kinney*, 950 F.2d at 465.

Plaintiff alleges that during a transport of Mr. Aguilar by sheriff's deputies to a medical facility, Mr. Aguilar attempted to flee and Deputy Burkard shot Mr. Aguilar in the back, which resulted in his eventual death. "The extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." *Id.* (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)); *see also United States v. LaVallee*, 439 F.3d 670, 687-88 (10th Cir. 2006). However, following *Wilkins* and its progeny, the proper inquiry is not the extent of the injury, but whether the allegations demonstrate Deputy Burkard's use of force was applied maliciously and sadistically to cause harm. *Wilkins*, 559 U.S. at 37. Here, Plaintiff does not describe the circumstances surrounding the shooting, except to say that Mr. Aguilar was attempting to escape. Plaintiff alleges that the shooting was "maliciously performed in a manner that is shocking to the conscience," but fails to include any facts explaining how the shooting might be considered "malicious" or "shocking." In fact, the Court agrees with Defendants that Plaintiff's sparse allegations may be read to involve potentially permissible conduct.

In the absence of such factual allegations,[3] the Court must conclude that Plaintiff, while identifying the harm allegedly caused by the shooting, does not allege sufficient facts demonstrating Burkard acted maliciously and sadistically to cause Mr. Aguilar's death. Rather, Plaintiff's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," such that Plaintiff has "not nudged [its] claims across the line from conceivable to plausible." *See Khalik*, 671 F.3d at 1191 (quoting *Robbins*, 519 F.3d at 1247).

Therefore, because the Plaintiff's allegations fail to state a claim for cruel and unusual punishment, the Court recommends that the District Court grant Defendants' motion to dismiss Plaintiff's Claim Two against Defendant Burkard.

**III.    Claims Four and Five**

Although not entirely clear, the Court construes Plaintiff's fourth and fifth claims as alleging a conspiracy to violate Plaintiff's constitutional rights (Claim Four) and the action taken by the individual Defendants in furtherance of the conspiracy – i.e., refusing or neglecting to prevent the violation of Plaintiff's constitutional rights (Claim Five).[4]

To succeed with a conspiracy claim pursuant to 42 U.S.C. § 1985(3), the Plaintiff must show (1) the existence of a conspiracy (2) intended to deny him equal protection under the laws or equal privileges and immunities of the laws (3) resulting in an injury or deprivation of federally-protected

---

[3]The Plaintiff might argue that, considering Mr. Aguilar's death, the Plaintiff has insufficient information regarding the shooting and may need discovery to learn such information. The Court finds, however, the Plaintiff likely has information including, but not limited to, Mr. Aguilar's conviction, his criminal history (if any) and his ailment that required medical attention, all of which would be relevant to determine whether the shooting was "a good-faith effort to maintain or restore discipline, or [applied] maliciously and sadistically to cause harm."

[4]To the extent these claims are alleged against Jefferson County and/or the Defendants in their official capacities, the Court recommends granting the motion to dismiss such claims for the same reasons set forth in the analysis of Claims One and Three. *See supra*, section I.

rights, and (4) an overt act in furtherance of the object of the conspiracy. *Murray v. City of Sapulpa*, 45 F.3d 1417, 1423 (10th Cir. 1995) (citing *Griffin v. Breckenridge,* 403 U.S. 88, 102-03 (1971)); *see also Ward v. St. Anthony Hosp.*, 476 F.2d 671, 676 (10th Cir. 1973). The Tenth Circuit has clarified these elements over the years. *See Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993), *cert. denied*, 510 U.S. 1093 (1994). First, a valid claim must involve a conspiracy. Second, § 1985(3) does not "apply to all tortious, conspiratorial interferences with the rights of others," but rather, only to conspiracies motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Id.* (citing *Griffin*, 403 U.S. at 101-02); *see also Bisbee v. Bey*, 39 F.3d 1096, 1102 (10th Cir. 1994) ("[a] violation of section 1985 must include class-based or racially discriminatory animus"). The language of this requirement has been narrowly construed and does not reach conspiracies motivated by an economic or commercial bias. *Tilton*, 6 F.3d at 686 (citing *United Bhd. of Carpenters & Joiners of America, Local 610, AFL-CIO v. Scott,* 463 U.S. 825, 837 (1983)). Third, § 1985(3) covers conspiracies aimed at interfering with rights that are protected against both private and official conduct. *Id.*

Here, the Plaintiff makes no allegations of race or class-based animus; there are no facts indicating the Plaintiff's or any of the Defendants' races and Plaintiff does not identify any other class to which he might belong. Therefore, to the extent that Plaintiff seeks relief pursuant to 42 U.S.C. § 1985(3), Plaintiff's claim must fail. The Court recommends finding the individual Defendants are entitled qualified immunity from suit regarding Plaintiff's Claim Four alleging a conspiracy to violate Mr. Aguilar's equal protection rights.[5]

---

[5] The Plaintiff also alleges that "Mr. Aguilar was deprived of ... his liberty without due process of law" in this claim. However, § 1985(3) specifically provides a private right of action for persons alleging a conspiracy to deprive that person a or class of persons the equal protection of the laws. *See* 42 U.S.C. § 1985(3).

With respect to Claim Five, to the extent that the claim identifies only the "overt action taken in furtherance of the conspiracy," the claim also must fail. However, even if the claim does not refer specifically to the "conspiracy" alleged in Claim Four, the Plaintiff fails to allege any facts supporting its claim that the individual Defendants – Mink, Fleer, Mundell, Shrader, Gard, or Pocsik – refused or failed to train or supervise Jefferson County deputies, including Burkard, or prevented the shooting of Mr. Aguilar. Accordingly, this Court recommends finding the individual Defendants are entitled qualified immunity from suit regarding Plaintiff's Claim Five alleging Defendants' refusal or failure to prevent the violation of Mr. Aguilar's constitutional rights.

## CONCLUSION

In sum, the Court concludes that Plaintiff fails to state plausible claims that Jefferson County and the Defendants in their official capacities are liable, that Deputy Burkard violated Mr. Aguilar's Eighth Amendment right against cruel and unusual punishment, and that the other Defendants conspired to violate, or refused or failed to prevent violation of, Mr. Aguilar's constitutional rights. Consequently, this Court respectfully RECOMMENDS that the District Court **GRANT** the Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) [filed June 6, 2013; docket #24] as set forth herein.

DATED this 24th day of July, 2013, in Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge